Shawnee Perdue, ISB No. 8888
**PERDUE LAW PLLC**
800 W. Main St., Ste 1460
Boise, Idaho 83702
Telephone: (208) 405-9583
shawnee@perduelawoffice.net


DeAnne Casperson, Esq. (ISB No. 6698)
dcasperson@workandwage.com
Amanda E. Ulrich, Esq. (ISB No. 7986)
aulrich@workandwage.com
Ryan S. Dustin, Esq. (ISB No. 8683)
rdustin@workandwage.com
**CASPERSON ULRICH DUSTIN PLLC**
356 W. Sunnyside Rd., Suite B
Idaho Falls, ID 83402
Telephone: (208) 524-0566
Facsimile: (208) 745-2523

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF IDAHO**

| | |
|---|---|
| JENNIFER DOE, an individual proceeding under a pseudonym,<br><br>　　　　Plaintiff,<br>v.<br><br>FRUITLAND SCHOOL DISTRICT NO. 373; an Idaho Public School District; KELLY RHINEHART, an individual; and JOHN/JANE DOES I through X, whose true identities are presently unknown,<br><br>　　　　Defendants. | **Case No. 1:20-cv-00465-SAB**<br><br>**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

## COMPLAINT

　　　　COMES NOW Plaintiff, Jennifer Doe, by and through her attorneys of record, Perdue Law PLLC and Casperson Ulrich Dustin PLLC, and for causes of action against above named Defendants, hereby complains, and alleges as follows:

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 1**

## PARTIES

1. At all relevant times herein mentioned, Plaintiff Jennifer Doe was under the age of 18, was, a resident of Payette County, Idaho, and attended Fruitland High School.

2. Plaintiff Jennifer Doe is proceeding under a pseudonym because she is the victim of childhood sexual abuse and publicity of her true identity will cause her further unwarranted trauma. Plaintiff's true identity is known to Defendants.

3. At all relevant times herein mentioned, Fruitland High School (hereinafter, the "School") was located in Fruitland, Idaho as part of Defendant Fruitland School District No. 373 (hereinafter referred to as the "District"). The District was and is a corporate and political body organized and existing under the laws of the state of Idaho.

4. At all relevant times herein mentioned, Defendant Kelly Rhinehart (hereinafter "Rhinehart"), was a track coach for Fruitland High School and was a resident of Payette County, Idaho.

5. Defendants John/Jane Does I through X, whose true identities are presently unknown, are entities or individuals who were the agents, employees, independent contractors, subdivisions, franchisees, wholly-owned subsidiaries, or divisions of Defendants herein or are entities or individuals acting on behalf of, or in concert with, Defendants herein.

## JURISDICTION AND VENUE

6. This is a civil action over which this Court has jurisdiction pursuant to Title IX of the Education Amendments Act of 1972. This Court's jurisdiction over Plaintiff Jennifer Doe's state law claims is founded upon 28 U.S.C. § 1367.

7. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), because all Defendants are either residents or corporate or governing bodies of the state of Idaho, and because

all acts complained of herein occurred in Payette County, Idaho.

## FACTS COMMON TO ALL COUNTS

8. Plaintiff Jennifer Doe (hereinafter "Plaintiff") was a student at the School in the District and was a minor at all relevant times in this Complaint.

9. Rhinehart was an adult male, employed by the District as a track coach for the School's track team. Rhinehart began coaching track for the School in approximately 2010. As a track coach, Rhinehart was authorized and empowered by the District and the School to perform duties as a staff member including supervision, discipline, and developing relationships with student athletes.

10. The School and the District received information that Rhinehart should not be coaching because he had inappropriate relationships with vulnerable populations in previous volunteer or employment positions prior to his coaching at Fruitland High School.

11. Rhinehart's conduct toward students and athletes had caused other school employees concern or to make statements that they did not trust Rhinehart.

12. At all times referenced in this Complaint, Rhinehart was approximately 52 years of age, and Plaintiff was 16/17 years of age.

13. Rhinehart began communicating with Plaintiff in the Spring/Summer of 2018. Rhinehart used Plaintiff's family tragedy and the purchase of Plaintiff's family home as a means to befriend Plaintiff and her family. Rhinehart promised Plaintiff a job, promised to help her get into college, and promised to act has a coach/mentor for Plaintiff. Rhinehart gained Plaintiff's trust and confidence by attending her soccer and basketball games.

14. In approximately the fall of 2018, Rhinehart began using the School's basketball court to practice basketball with Plaintiff. Rhinehart used the guise of a coach and mentor to gain

Plaintiff's trust. The School permitted Rhinehart to be on the school campus alone with Plaintiff after school hours, despite this violating school-student safety policies. It was at these practices that Rhinehart began making sexual innuendos toward Plaintiff.

15. Beginning in the fall of 2018, Rhinehart began noticeably singling out Plaintiff, by taking her to basketball games, sitting alone with her, practicing alone with her on the School campus without other adults or students present, talking intimately with Plaintiff at School events, texting Plaintiff, publicly acting flirtatious with Plaintiff, and giving Plaintiff rides in his car.

16. Rhinehart encouraged Plaintiff to participate in track. During the 2019 track season Rhinehart escalated his grooming and sexual conduct toward Plaintiff. Rhinehart publicly flirted with Plaintiff at track practice, at track meets, and after track practices. Rhinehart would single out Plaintiff at track practice to talk about sexual acts or flirtatious subjects. Rhinehart used track practice to get closer to Plaintiff.

17. FSD's safety policies prohibited Rhinehart from giving students rides in his car at any time, texting students without another coach present on the chain, speak with students about anything outside the sport, have inappropriate conversations with student athletes, or use inappropriate language in front of student athletes. Despite the policies, Rhinehart openly, and with the knowledge of other FSD employees, gave Doe rides home, texted with Doe, and engaged in private conversations with Doe at track practice and on school grounds.

18. In April of 2019, Rhinehart expressed his sexual feelings for Plaintiff. On April 4, 2019, Rhinehart and Plaintiff parked their cars next to each other after track practice and talked for an extended period of time.

19. On Friday April 5, 2019, Rhinehart approached Plaintiff at a track meet and requested they have another personal conversation. Plaintiff asked Rhinehart to leave her alone so

she could focus on the track meet. After the track meet, on the school bus home, Rhinehart flirtatiously touched Plaintiff's leg in front of students and staff while he was counting the students on the bus.

20. On April 6, 2019, Rhinehart sexually abused Plaintiff while on School grounds. After the incident, Rhinehart told Plaintiff that he knew she was "good at keeping secrets."

21. At another track practice in April 2019, Rhinehart isolated Plaintiff in a storage shed and sexually abused Plaintiff during track practice and on School grounds. Another track coach saw Rhinehart and Plaintiff emerge from the storage shed alone but did and said nothing.

22. On or about April 17, 2019, Plaintiff injured her ankle while at track practice. Rhinehart used Plaintiff's injury to get her alone. In the presence of the School's coaching staff and athletes, Rhinehart pulled up his truck to the track field, and escorted Plaintiff to his truck. Rhinehart then commented "they will think I'm taking you to the doctor, so this is perfect." Rhinehart then drove Plaintiff around, while injured, and immediately turned the conversation sexual. Rhinehart then sexually abused Plaintiff. Rhinehart then dropped Plaintiff off at her car. No members of the School's coaching staff checked on or verified Plaintiff's wellbeing.

23. On or about April 30, 2019, Rhinehart singled out Plaintiff at track practice and arranged to meet her. After track practice, Rhinehart sexually abused Plaintiff.

24. Upon information and belief, Rhinehart engaged in flirtatious and inappropriate conduct with Plaintiff openly and his conduct was observable by School coaches, staff, and personnel. Upon information and belief, no action, follow-up, or investigation occurred despite the obvious inappropriate conduct.

25. Rhinehart's conduct was discovered and reported by Plaintiff's friend, who reported to her parents and the athletic director. The athletic director then reported Rhinehart's

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 5**

conduct to the Superintendent and the police. Teresa Fabricius, the Superintendent, placed Rhinehart on administrative leave for "boundary issues" and apologized to him for abruptly placing Rhinehart on leave.

26. Upon discovery of Rhinehart's abusive conduct, he instructed Plaintiff to delete all her calls and texts on her phone from him.

27. Upon information and belief, throughout the period of Rhinehart's grooming of Plaintiff for sexual abuse while she attended the School, which occurred within view of District employees, the District failed to question Rhinehart about the nature of his relationship with Plaintiff, failed to investigate the conspicuous relationship between Rhinehart and Plaintiff, and failed to notify Plaintiff's parents about the conspicuous relationship. Instead, the District allowed Rhinehart to abuse his influence as a track coach to sexually abuse Plaintiff, during and after track practice and on the School premises.

28. The District allowed this conduct to continue, despite the fact that the District had received warnings about Rhinehart and despite the fact that another Fruitland track and basketball coach had been removed from his position for inappropriate conduct toward female students and staff.

29. Approximately six months prior to the discovery of Rhinehart's conduct, the principal of Fruitland High School, was placed on administrative leave, investigated, and found to have engaged in sexual harassment and inappropriate sexual conduct of staff and students. Despite this, FSD failed to appoint a Title IX coordinator, implement training for students and staff regarding sexual harassment and sexual misconduct, enforce existing policies, and implement policies to protect students and staff.

30. The District acted with deliberate indifference to the safety of students, including

Plaintiff, and/or tacitly authorized Rhinehart's misconduct to continue.

31. After Rhinehart's conduct was discovered, FSD failed to investigate Rhinehart's behavior and failed to offer any supportive measures to Plaintiff. FSD's staff and coaches instructed Plaintiff to not speak to them about Rhinehart and had conversations amongst themselves about intentionally avoiding Plaintiff as a result of her reporting Rhinehart's abuse.

## COUNT ONE
## Civil Rights Claim - 14th Amendment - 42 U.S.C. § 1983

32. Plaintiff incorporates herein by reference all the foregoing and following allegations of the Complaint.

33. The District was deliberately indifferent to Plaintiff's rights under the Eighth and/or Fourteenth Amendments of the U.S. Constitution in one or more of the following respects:

   a. In failing to have and maintain proper policies and procedures to protect its students from predatory behaviors of its employees, coaches, and staff;

   b. In failing to properly train its staff, employees, volunteers, and coaches of the District and the School on how to detect and identify predatory behavior. This failure led to the inability and/or unwillingness of the District and other District employees to recognize or appreciate the significance of Rhinehart's grooming, boundary violations, and overt predatory behavior directed at Plaintiff; and,

   c. In failing to educate its students to recognize and report predatory behavior.

34. These failures by the District allowed Rhinehart's conspicuous predatory behavior to go unchecked as detailed above.

35. As a direct result of the actions and inactions of the District as set forth above, Plaintiff endured and suffered severe physical, mental, and emotional distress. Plaintiff is entitled to compensatory damages in an amount to be determined by a jury.

36. The actions of the District were deliberately indifferent to the civil rights of Plaintiff, and callously disregarded Plaintiff's physical safety, as such punitive damages should be

awarded in an amount to be determined by a jury.

37.     Plaintiff is entitled to her necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

## COUNT TWO
### Civil Rights Claim - 8th and/or 14th Amendments - 42 U.S.C. § 1983
### (*Monell* Claims)

38.     Plaintiff incorporates herein by reference all the foregoing and following allegations of the Complaint.

39.     The moving forces that resulted in the deprivation of Plaintiff's Eighth and/or Fourteenth Amendment Rights were the following policies, customs, practices of the District:

   a. A policy, custom, or practice of not providing training to all School and District staff members on how to identify, investigate, report, and prevent grooming, boundary violations, and sexually predatory behavior;

   b. A policy, custom or practice of not adopting sufficient policies and procedures as to how to identify, investigate, report, and prevent grooming, boundary violations, and sexually predatory behavior;

   c. A policy, custom or practice of not implementing policies and procedures as to how to identify, investigate, report, and prevent grooming, boundary violations, and sexually predatory behavior; and,

   d. A policy, custom, or practice of not reporting or otherwise ignoring information indicating sexual conduct by its staff toward its students.

40.     The policies of the District posed a substantial risk of causing significant harm to its students, including Plaintiff, and the District was aware of the risk.

41.     As a direct result of the policies, custom or practices of the District, Plaintiff was sexually abused by Rhinehart. As a direct result of the policies, customs or practices of the District, Plaintiff endured and suffered severe physical, mental, and emotional distress. Plaintiff is entitled to compensatory damages in the amount to be determined by a jury.

42.     The actions of the District were deliberately indifferent to the civil rights of

Plaintiff, and callously disregarded Plaintiff's physical safety, as such, punitive damages should be awarded in an amount to be determined by a jury.

43. Plaintiff is entitled to her reasonable and necessary attorney fees and costs incurred in the prosecution of this action.

## COUNT THREE
### Civil Rights Claim - 14th Amendments - 42 U.S.C. § 1983
### (Supervisory Liability)

44. Plaintiff incorporates herein by reference all the foregoing and following allegations of the Complaint.

45. The District, in its supervisory capacity, was aware of the policies, customs or practices as alleged above, and was aware that said policies, customs or practices created a substantial risk of causing harm to students of the District and the School by endangering their physical, mental, and emotional safety. Despite its knowledge, the School and the District approved of and ratified said policies, customs, or practices.

46. Defendant, in its supervisory capacities, failed to adequately train its staff, teachers, and volunteers how to:

   a. Identify or recognize suspicious or predatory behavior indicating a risk of child sexual abuse by its adult staff and volunteers;

   b. Investigate suspicious or predatory behavior by its adult staff and volunteers;

   c. Report suspicious or predatory behavior by its adult staff and volunteers;

   d. Prevent predatory behavior by its adult staff and volunteers;

   e. Investigate and/or report all rumors of romantic sexual relationships between its students and its staff or volunteers; and,

   f. Implement or follow District policies and procedures on sexual assault and harassment.

47. The District was aware that its failure to train, as set forth above, created a

substantial risk of causing harm to its students.

48. The District, in its supervisory capacity, had actual and constructive notice that Rhinehart's inappropriate and predatory conduct constituted a threat to its students including Plaintiff. The District was on actual and constructive notice based on the following overt and observable conduct of Rhinehart:

   a. Rhinehart engaged in intimate one-on-one conversations with Plaintiff during School events;

   b. Rhinehart spent an inordinate amount of time around Plaintiff, with no legitimate educational or coaching purpose;

   c. Rhinehart was observed isolating or taking Plaintiff to secluded areas on the School premises with no legitimate educational or coaching purpose;

   d. Rhinehart was alone with Plaintiff on the School premises after school hours without any other students or School or District staff;

   e. Rhinehart was observed giving Plaintiff rides after practice and speaking with Plaintiff at length alone after practice; and,

   f. Rhinehart was permitted to carry Plaintiff when she was injured to his vehicle during track practice, while coaches and athletes watched, and was permitted to drive away with Plaintiff. No member of the staff called to inquire about Plaintiff's well-being or Rhinehart's conduct.

49. As a direct result of the District's actions and inactions as discussed above, Plaintiff endured and suffered severe physical and emotional distress.

50. The actions of the District were deliberately indifferent to the civil rights of Plaintiff, and callously disregarded Plaintiff's physical safety, as such, punitive damages should be awarded in an amount to be determined by a jury.

51. Plaintiff is entitled to her reasonable and necessary attorney fees and costs incurred in the prosecution of this action.

## COUNT FOUR
### State Created Danger - 14th Amendment - 42 U.S.C. § 1983
### (Supervisory Liability)

52. Plaintiff incorporates herein by reference all the foregoing and following allegations of the Complaint.

53. The District, being a school district, acted in *loco parentis* to Plaintiff. As such the District had a special relationship to Plaintiff.

54. The District, with deliberate indifference, exposed Plaintiff to Rhinehart's grooming, boundary violations, and overtly predatory behavior.

55. The District's deliberately indifferent exposure of Plaintiff to Rhinehart, affirmatively placed Plaintiff into a state-created danger of sexual abuse by Rhinehart.

56. Plaintiff suffered sexual abuse by Rhinehart as a result of the District's deliberate indifference to the state-created danger of sexual abuse that the District created.

57. The District's conduct deprived Plaintiff of her right to bodily safety and her liberty to control her body.

58. As a direct result of the District creating a danger of sexual abuse by Rhinehart, Plaintiff incurred economic and non-economic damages and is entitled to compensatory damages in an amount to be determined by a jury.

59. The actions of the District were deliberately indifferent to the civil rights of Plaintiff, and callously disregarded Plaintiff's physical safety, as such, punitive damages should be awarded in an amount to be determined by a jury.

60. Plaintiff is entitled to her reasonable and necessary attorney fees and costs incurred in the prosecution of this action.

### COUNT FIVE
**Gender Discrimination/ Sexually Hostile Culture In Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a)**

61. Plaintiff incorporates herein by reference all the foregoing and following allegations of the Complaint.

62. The District receives federal funding and is subject to Title IX of the Education of Amendments of 1972, 20 U.S.C. § 1681(a) (hereinafter referred to as Title IX).

63. Title IX protects employees and students of an education institution, including the District, from gender discrimination and harassment.

64. The District's actions and omissions constitute unlawful discrimination against Plaintiff in violation of her rights under Title IX.

65. The District actively created and was deliberately indifferent to a culture of sexual hostility by its staff members towards its students within the District by instituting several policies and permitting practices that included, but are not limited to, the following:

   a. Failing to address the reports and incidents of sexual harassment/inappropriate conduct by its staff members and volunteers towards its students;

   b. Hiring and retaining staff and volunteers with known or reported histories of inappropriate conduct with students and minors;

   c. Permitting and allowing observable and obvious predatory conduct between its staff/volunteers and its students;

   d. Failing to train all School and District staff members on how to identify, investigate, report, and prevent grooming, boundary violations, and sexually predatory behavior;

   e. Failing to adopt sufficient policies and procedures as to how to identify, investigate, report, and prevent grooming, boundary violations, and sexually predatory behavior;

   f. Failing to implement policies and procedures as to how to identify, investigate, report, and prevent grooming, boundary violations, and sexually predatory behavior; and

  g. Ignoring information indicating sexual conduct by its staff members towards its students.

66. The District's deliberate indifference and sexually hostile policies and practices were a direct and proximate cause of Plaintiff's sexual abuse by Rhinehart.

67. As a direct and proximate cause of the District's deliberate indifference and sexually hostile environment, Plaintiff suffered damages and injuries for which the District is liable; Plaintiff may thus recover punitive damages from the District in an amount to be proven at trial.

## COUNT SIX
## RETALIATION IN VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972, 20 U.S.C. §1681(a)

68. Plaintiff incorporates herein by reference all the foregoing and following allegations of the Complaint.

69. FSD receives federal funding and is subject to Title IX of the Education of Amendments of 1972, 20 U.S.C. § 1681(a).

70. Title IX prohibits retaliation against students and employees who report sexual harassment or engage in protected activity.

71. As stated, Plaintiff's friend reported Rhinehart's sexual assault to the FSD's athletic director on or about May 3, 2019. A police investigation was subsequently initiated and Rhinehart was placed on administrative leave.

72. Plaintiff was interviewed by police in early May of 2019 regarding the sexual assault and harassment committed by Rhinehart.

73. Neither FSD nor Ms. Fabricius initiated any internal investigation into Rhinehart, and relied on the police investigation in its entirety.

74. Plaintiff engaged in protected activity by participating in the ISP investigation regarding Rhinehart's conduct.

75. Defendants FSD wrongfully retaliated against Plaintiff for engaging in protected activity in violation of Title IX, by failing to conduct any investigation, failing to provide any supportive measures to Plaintiff, allowing employees to isolate and intentionally ignore Plaintiff, allowing students to spread rumors about Plaintiff.

76. Defendants FSD committed the acts alleged, or failed to act as reasonably required, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff may thus recover punitive damages from Defendants FSD in amounts to be proven at trial.

## COUNT SEVEN
### Negligence/Negligent Supervision

77. Plaintiff incorporates herein by reference all the foregoing and following allegations of the Complaint.

78. The District established a special relationship with Plaintiff once Plaintiff became a student of the District and the School and held out to Plaintiff that its facilities were safe and trustworthy. The special relationship created a duty on the part of the District to ensure that its facilities and services are safe as possible from known dangers and to exercise reasonable care in the selection, training, supervision, and retentions of staff and volunteers, including Rhinehart.

79. Alternatively, or in conjunction with the above, Plaintiff had a special relationship with the District as a child entrusted to the care and control of the District in *loco parentis*. This special relationship created a duty of care on the part of the District to ensure Plaintiff's safety while she was a student.

80. On information and belief, the District acted negligently and created a foreseeable risk of Rhinehart abusing its students, including Plaintiff, by failing to undertake reasonable child abuse prevention measures in one or more of the following ways:

   a. Failing to address the reports and incidents of sexual harassment/inappropriate conduct by its staff members and volunteers towards its students;

   b. Hiring and retaining staff and volunteers with known or reported histories of inappropriate conduct with students and minors;

   c. Permitting and allowing observable and obvious sexually predatory conduct between its staff/volunteers and its students;

   d. Failing to train all School and District staff members on how to identify, investigate, report, and prevent grooming, boundary violations, and sexually predatory behavior;

   e. Failing to adopt sufficient policies and procedures as to how to identify, investigate, report, and prevent grooming, boundary violations, and sexually predatory behavior;

   f. Failing to implement policies and procedures as to how to identify, investigate, report, and prevent grooming, boundary violations, and sexually predatory behavior; and

   g. Ignoring information indicating sexual conduct by its staff towards its students.

81. Any or all of the District's failures described above were substantial contributing and causal factors of all or some of Plaintiff's sexual abuse and damages. Plaintiff endured and suffered severe physical, mental, and emotional distress. Plaintiff is entitled to compensatory damages in an amount to be determined by a jury.

82. The District's failures described above created a foreseeable risk that students in the District's care, including Plaintiff, would be sexually abused. Plaintiff's interest in being protected and free from child sexual abuse was an interest of a kind that the law protects against by negligent invasion.

83. The District's failures were a direct and foreseeable cause of all or some of Plaintiff's sexual abuse and damages, as alleged above. As a result, and as a consequence of the District's negligence, Plaintiff has incurred economic and non-economic damages, and is entitled to compensatory damages in an amount to be determined by a jury.

## COUNT EIGHT
### Sexual Battery/Rape of Minor
### (As to Defendant Rhinehart)

84. Plaintiff incorporates herein by reference all the foregoing and following allegations of the Complaint.

85. As described above Rhinehart engaged in grooming, boundary violations, and overtly predatory behavior toward Plaintiff. Rhinehart used his position as a coach and mentor to gain Plaintiff's trust and to sexually abuse Plaintiff.

86. Rhinehart engaged in harmful and offensive touching of Plaintiff, a minor, to which Plaintiff did not, nor could not, consent to.

87. Rhinehart's sexual abuse of Plaintiff occurred on the premises of the School.

88. Rhinehart acted with malice and/or reckless and outrageous indifference to a highly unreasonable risk of harm with conscious disregard to Plaintiff's health, safety, and welfare. As such, punitive damages should be awarded against Rhinehart as determined by a jury.

## COUNT NINE
### Intentional Infliction of Emotional Distress
### (As to all Defendants)

89. Plaintiff incorporates herein by reference all the foregoing and following allegations of the Complaint.

90. The conduct by the District (acting through its employees and/or agents) as set forth in this Complaint, was intentional and/or reckless. This conduct was extreme and outrageous and

caused Plaintiff to suffer severe emotional distress.

91. Rhinehart's conduct as set forth in this Complaint was intentional and/or reckless. His conduct was extreme and outrageous and caused Plaintiff to suffer severe emotional distress.

92. There is a causal connection between Plaintiff's severe emotional distress and the wrongful conduct of the District and Reinhart.

93. The wrongful conduct of the District and Rhinehart has caused Plaintiff to suffer severe emotional distress and suffer damages in an amount to be proven at trial.

## COUNT TEN
### Negligent Infliction of Emotional Distress
### (As to all Defendants)

94. Plaintiff incorporates herein by reference all the foregoing and following allegations of the Complaint.

95. As alleged above Defendant District and Rhinehart owed a duty to Plaintiff and breached the duty owed to Plaintiff.

96. Defendants breach of the duty owed to Plaintiff caused her to suffer severe, emotional distress.

97. Plaintiff's severe, emotional distress resulted in physical manifestations of that distress, including, but not limited to, difficulty sleeping, heightened anxiety, loss of appetite, listlessness, and/or fatigue.

98. The District and Rhinehart's negligent, reckless, willful, wanton, and/or otherwise tortious conduct caused Plaintiff to suffer damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as a result of the acts, omissions, and conduct of Defendants set forth herein as follows:

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 17**

1. An award of compensatory damages for emotional distress, pain and suffering, and other noneconomic damages in an amount to be proven at trial;

2. An award to Plaintiff for punitive damages as plead in this Complaint;

3. An award to Plaintiff for the costs of this action, including reasonable attorney fees; and

4. An award to Plaintiff for such other and further legal and equitable relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38(b).


DATED:  This 25th day of July, 2022.


PERDUE LAW, PLLC.

_____
Shawnee S. Perdue
Attorney to Plaintiff